**COUNTRY BOYS AUCTION & REALTY CO. v. CAROLINA WAREHOUSE, INC.**

[180 N.C. App. 141 (2006)]

COUNTRY BOYS AUCTION & REALTY CO., INC., Plaintiff v. CAROLINA WARE-
HOUSE, INC., JERRY C. MOYES; AND TERRY McLAUGHLIN, Defendants

No. COA06-210

(Filed 7 November 2006)

**1. Appeal and Error— appealability—partial summary judg-
ment—auctioneer's fee—substantial right**

An appeal from a partial summary judgment affected a sub-
stantial right and was interlocutory but immediately appealable
where the case involved the auction of farm equipment, partial
summary judgment was granted on the issue of the auctioneer's
fee, implicit in the trial court's judgment is a finding that the auc-
tion was commercially reasonable, and there was the possibility
of prejudice from a later inconsistent finding on the commercial
reasonableness of the sale.

**2. Auctions— auctioneer's contract—third-party beneficiary**

Partial summary judgment was correctly granted for plaintiff,
an auction company, on the issue of whether defendant Moyes
was a third-party beneficiary of the original auction contract. Any
benefit to Moyes from that contract was merely incidental; as he
lacked standing to enforce rights under the first contract, his
challenge to the validity of the second fails.

**3. Auctions— second contract and new fee structure—com-
mercial reasonableness**

Partial summary judgment was correctly granted against
defendant Moyes on the issue of auction fees where Moyes con-
tended that there were genuine issues of fact concerning the
commercial reasonableness of a second auction contract and its
terms. Plaintiff presented evidence of the commercial reason-
ableness of both the contract and the sale, while Moyes did not
forecast a prima facie case of commercial unreasonableness.

Appeal by defendant Jerry C. Moyes from an order entered 17
October 2005 by Judge William C. Griffin, Jr. in Beaufort County
Superior Court. Heard in the Court of Appeals 11 October 2006.

*Battle, Winslow, Scott & Wiley, P.A., by W. Dudley Whitley, III,
for plaintiff-appellee.*

*Stubbs & Perdue, P.A., by Rodney A. Currin, for defendant-
appellee Carolina Warehouse, Inc.*

COUNTRY BOYS AUCTION & REALTY CO. v. CAROLINA WAREHOUSE, INC.

[180 N.C. App. 141 (2006)]

*Rose Rand Attorneys, P.A., by T. Slade Rand, Jr., and Jason R. Page, for defendant-appellant Moyes.*

BRYANT, Judge.

Defendant Jerry C. Moyes (Moyes) appeals from an order entered 17 October 2005 granting partial summary judgment in favor of Country Boys Auction & Realty Company, Inc. (plaintiff), a North Carolina corporation owned and operated by Douglas Gurkins and his son, Mike Gurkins. For the reasons below, we affirm the order of the trial court.

*Facts*

On 6 June 2002, Moyes entered into a subordination agreement with Cornerstone Bank (Cornerstone) whereby Cornerstone agreed to lend Bell Quality Tobacco Products, L.L.C. (later known as Ridgeway Brands Manufacturing) $1,500,000 and Moyes agreed to subordinate his claims against Ridgeway to those of Cornerstone. Moyes also agreed to guarantee payment of the loan. As collateral for the loan, Cornerstone took a security interest in certain equipment owned by Ridgeway.

Ridgeway subsequently defaulted on its debt to Cornerstone, and, on 15 November 2004, Cornerstone contracted with plaintiff to sell the collateral at auction. Cornerstone agreed to pay plaintiff a fee of "Seventy Five Hundred Dollars ($7,500) and 10% of the amount bid over the bank[']s last bid if a third party purchases the equipment, whichever is greater[.]" Cornerstone also agreed to give plaintiff $5,000 from which plaintiff was to fund advertising for the auction, however the contract stipulated that Cornerstone would "only have to pay the exact amount spent on advertising." The date of the auction sale was set as 16 December 2004.

On 3 December 2004, Cornerstone sold the note covering the debt owed by Ridgeway to defendant Carolina Warehouse, Inc. (Carolina Warehouse) for $2,392,788.42. Included in this sale was $11,507.58, paid over to plaintiff as an "Auctioneer's Commission." Carolina Warehouse subsequently approached plaintiff and sought to assume the auction contract between plaintiff and Cornerstone. Plaintiff declined the offer and entered into negotiations with Carolina Warehouse to sell the collateral at auction and, on 6 December 2004, Carolina Warehouse contracted with plaintiff to sell the collateral at auction.

**COUNTRY BOYS AUCTION & REALTY CO. v. CAROLINA WAREHOUSE, INC.**

[180 N.C. App. 141 (2006)]

Under the new contract, Carolina Warehouse agreed to pay plaintiff a fee of "$10,000 or 5% of the Auction price above 2.4 million whichever is greater if they purchase the equipment at foreclosure[,] . . . [or] $10,000 or 10% of the Auction price above 2.4 million, whichever is greater if anyone other that Carolina Warehouses [sic] Inc. purchases it at the sale." Carolina Warehouse also agreed to provide $5,000 from which plaintiff was to fund advertising for the auction, although Carolina Warehouse would "pay only the amount used." The date of the auction sale was again set as 16 December 2004.

At the auction Moyes was the high bidder at $3,725,000. After satisfaction of the lien held by Carolina Warehouse, and a credit to the second lien held by Moyes, plaintiff retained approximately $270,000 of the auction sale proceeds.

*Procedural History*

On 28 January 2005, plaintiff filed its Complaint for Interpleader and Declaratory Relief in this matter, claiming it is owed a fee of $135,825 from the sales proceeds (10% of the auction price above $2,400,000 plus advertising costs of $3,325). Moyes filed his Answer on 4 March 2005; counterclaimed for breach of contract, conversion and breach of fiduciary duty; and filed a cross-claim against Carolina Warehouse for breach of contract. Carolina Warehouse filed its Answer and Counterclaim on 24 March 2005. Additionally, defendant Terry McClaughlin filed his Answer and Counterclaim on 28 March 2005, claiming a right to a commission of $119,639 out of the sale proceeds.

On 11 August 2005, plaintiff filed a motion for summary judgment, which was heard at the 6 October 2005 civil session of Beaufort County Superior Court by the Honorable William C. Griffin, Jr. Only the claims involving plaintiff's fee were before the trial court. Plaintiff's motion was granted by order entered on 17 October 2005. The trial court's order allows plaintiff to recover $135,825 in fees plus eight percent interest from 16 December 2004, and authorizes plaintiff to release this amount from the remaining funds it holds as a result of the auction sale. Moyes appeals.

Moyes raises the issues of whether the trial court erred in granting partial summary judgment in favor of plaintiff because genuine issues of material fact exist as to whether plaintiff was entitled: (I) to the fee established by the second auction contract; and (II) to have

its fee under the second auction contract paid out of the auction sale proceeds.

*Interlocutory Appeal*

[1] We first note that Moyes appeals from a grant of partial summary judgment in favor of plaintiff on its claim to a fee arising out of the auction sale. An order granting partial summary judgment is interlocutory, and "[o]rdinarily, there is no right of immediate appeal from an interlocutory order." *Johnson v. Lucas*, 168 N.C. App. 515, 518, 608 S.E.2d 336, 338 (2005) (citing *Travco Hotels, Inc. v. Piedmont Natural Gas Co.*, 332 N.C. 288, 292, 420 S.E.2d 426, 428 (1992)). However, an interlocutory judgment may be appealed if the judgment "deprives the appellant of a substantial right that would be lost unless immediately reviewed." *Currin & Currin Constr., Inc. v. Lingerfelt*, 158 N.C. App. 711, 713, 582 S.E.2d 321, 323 (2003) (citations and quotations omitted).

In asserting that a substantial right exists, Moyes argues that while the trial court's judgment is final as to plaintiff's claims to fees, there is a possibility of inconsistent judgments because unresolved claims arising from the same factual issues still remain between Moyes, Carolina Warehouse and McClaughlin. This Court has held that:

> where a claim has been finally determined, delaying the appeal of that final determination will ordinarily affect a substantial right *if* there are overlapping factual issues between the claim determined and any claims which have not yet been determined, thereby creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue.

*Country Club of Johnston County, Inc. v. United States Fid. & Guar. Co.*, 135 N.C. App. 159, 163, 519 S.E.2d 540, 544 (1999) (internal citations and quotations omitted).

In its judgment, the trial court found "that there is no genuine issue of material fact as to the commissions and fees sought by Plaintiff in its Complaint, and that as to those commissions and fees the Plaintiff is entitled to Judgment as a matter of law." The trial court then awarded plaintiff $135,825 plus interest for plaintiff's fee incurred as a result of the successful auction sale, ordering that it be paid out of the funds remaining from the proceeds generated by the auction sale. However, plaintiff's fee may only be paid out of the pro-

ceeds of the auction sale if that sale is commercially reasonable. N.C. Gen. Stat. §§ 25-9-610(b), -9-615(a)(1) (2005). Thus, implicit in the trial court's judgment is a finding that the auction sale of the equipment was commercially reasonable.

Moyes' cross-claim against Carolina Warehouses regarding the sales commission of McLaughin would also require a finding that the auction sale of the equipment was commercially reasonable. If a later judgment rests on a finding that the auction sale was not commercially reasonable, McLaughin's sales commission could not be paid out of the proceeds of the auction sale. *Id.* It is therefore possible that Moyes will be prejudiced by a later inconsistent finding as to the commercial reasonableness of the auction sale, and the judgment of the trial court before this court affects a substantial right and is immediately appealable.

### Standard of Review

Under Rule 56(c) of the North Carolina Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "The burden is upon the moving party to show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *McGuire v. Draughon,* 170 N.C. App. 422, 424, 612 S.E.2d 428, 430 (2005) (citing *Lowe v. Bradford,* 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982)).

Once the moving party meets its burden, the nonmovant, in order to survive the summary judgment motion, must "produce a forecast of evidence demonstrating that the [nonmovant] will be able to make out at least a *prima facie* case at trial." *Collingwood v. Gen. Elec. Real Estate Equities, Inc.,* 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citation omitted). The nonmovant "may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2005). In deciding upon a motion for summary judgment, a trial court must draw all inferences of fact against the movant and in favor of the nonmovant. *Collingwood,* 324 N.C. at 66, 376 S.E.2d at 427. On appeal, this Court reviews an order granting summary judgment *de novo. McCutchen v. McCutchen,* 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006).

COUNTRY BOYS AUCTION & REALTY CO. v. CAROLINA WAREHOUSE, INC.

[180 N.C. App. 141 (2006)]

*I*

[2] Moyes first argues the trial court erred in granting partial summary judgment in favor of plaintiff because genuine issues of material fact exist as to whether plaintiff was entitled to the fee established by the second auction contract. Moyes argues that, as a third-party beneficiary, he has standing to enforce the auction contract between Cornerstone and plaintiff, and that plaintiff has already been paid for its auction services under the Cornerstone contract and is not entitled to any fee arising under the auction contract between Carolina Warehouse and plaintiff. Moyes contends that plaintiff was bound to perform the auction sale under the Cornerstone contract and thus the auction contract between Carolina Warehouse and plaintiff is unenforceable. We disagree.

In order to assert rights as a third-party beneficiary under the Cornerstone contract, Moyes must show he was an intended beneficiary of the contract. This Court has held that Moyes must show:

> (1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and (3) that the contract was executed for the direct, and not incidental, benefit of the [third party]. A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person. It is not enough that the contract, in fact, benefits the [third party], if, when the contract was made, the contracting parties did not intend it to benefit the [third party] directly. In determining the intent of the contracting parties, the court should consider the circumstances surrounding the transaction as well as the actual language of the contract. When a third person seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement.

*Holshouser v. Shaner Hotel Group Props.*, 134 N.C. App. 391, 399-400, 518 S.E.2d 17, 25 (1999) (internal citations and quotations omitted).

There was sufficient evidence before the trial court to support a finding that Moyes was not an intended third-party beneficiary to the auction contract. Neither Moyes nor anyone else is designated as a beneficiary of the Cornerstone contract and there was no evidence to suggest that Moyes was aware of the Cornerstone contract until after the auction sale was held. Additionally, Moyes has also not forecast

evidence concerning whether the contract was executed for his direct benefit and has not set forth specific facts showing that there is a genuine issue for trial.

Moyes asserts that Cornerstone was aware of his status as a guarantor of the loan to Ridgeway and that plaintiff knew such guarantors existed. However, the only mention of guarantors in the circumstances surrounding the drafting and execution of the Cornerstone contract is in regards to plaintiff's fee structure for conducting the auction sale. Moyes points to the following language in an e-mail message from Mike Gurkins to Cornerstone's attorney as an indication that it was executed for his direct benefit:

> For this we would charge $7,500 if the property is bought back in by the bank or a guarantor. If the property is sold to a 3rd party not associated with this case we would get the $7,500 plus 10% of the amount that it brings above the bank[']s last bid.

While the change in fee structure would benefit Cornerstone if it or a guarantor purchased the equipment at auction as Cornerstone would have to pay a lower fee, there is nothing to indicate this lower fee was intended to benefit Moyes or any other possible guarantor. Furthermore, this fee structure was not part of the executed contract, which instead provides that plaintiff would be entitled to a fee of "Seventy Five Hundred Dollars ($7,500) and 10% of the amount bid over the bank[']s last bid if a third party purchases the equipment, whichever is greater[.]"

Any benefit to Moyes arising from the Cornerstone contract is merely incidental and he cannot recover under the contract. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 652, 407 S.E.2d 178, 182 (1991) ("If no intent to benefit is found, then the beneficiary is considered an incidental beneficiary, and no recovery is available."). As Moyes does not have standing to enforce any alleged rights under the Cornerstone contract, his challenge to the validity of the Carolina Warehouse contract must fail. This assignment of error is overruled.

## II

[3] Moyes next argues the trial court erred in granting partial summary judgment in favor of plaintiff because genuine issues of material fact exist as to whether plaintiff was entitled to have its fee under the second auction contract paid out of the auction sale proceeds. Moyes contends that Carolina Warehouse was a successor in

interest to the auction sale contract between Cornerstone and plaintiff and thus it was commercially unreasonable for Carolina Warehouse to enter into a new auction sale contract with plaintiff containing different price terms. Moyes also contends the new price terms were commercially unreasonable and thus plaintiff is not entitled to be paid out of the proceeds of the auction sale. We disagree.

The auction sale of the equipment is governed by Article 9 of the Uniform Commercial Code as codified in Chapter 25 of the North Carolina General Statutes. N.C. Gen. Stat. § 25-9-109 (2005). Under Article 9, a secured creditor conducting a sale under default is entitled to first apply the proceeds thereof to "[t]he reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party[.]" N.C. Gen. Stat. § 25-9-615(a)(1) (2005). Every aspect of the disposition of collateral by secured creditors upon default must be commercially reasonable. N.C. Gen. Stat. § 25-9-610(b) (2005). However, this Court has held:

> If the secured creditor disposes of the collateral at a public sale as directed in G.S. 25-9-601 *et seq.*, a conclusive presumption of commercial reasonableness is created. Absent the establishment of the conclusive presumption through a public sale in compliance with G.S. 25-9-601 *et seq.*, commercial reasonableness presents a factual issue to be determined by the jury in light of the relevant circumstances of each case.

*Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721-22, 329 S.E.2d 728, 730 (1985) (internal citations omitted).

From the record before this Court, plaintiff has put forward sufficient evidence of a valid public sale in compliance with Article 9. Moyes only contests the commercial reasonableness of the sale in that it was conducted pursuant to the terms of the Carolina Warehouse auction contract and not those of the Cornerstone auction contract. Moyes' belief that Carolina Warehouse was a successor in interest to the Cornerstone contract is not supported by the record evidence. There is no evidence supporting Moyes' claim that the Cornerstone contract was sold along with the note covering the debt owed by Ridgeway. The record indicates that the $2,392,788.42 payment to Cornerstone by Carolina Warehouse was for the "Sale of Loan Documents of Ridgeway Brands Manufacturing," and the Settlement Statement for that sale shows that $11,507.58 from the

proceeds Cornerstone received were for "Country Boys Auction, Auctioneer's commission". However, it is apparent that all parties treated these funds as a payment to plaintiff to terminate Cornerstone's obligations under their auction sale contract with plaintiff. Carolina Warehouse later asked plaintiff if it could "assume" the contract between Cornerstone and plaintiff, and plaintiff declined. Plaintiff and Carolina Warehouse subsequently entered into a separate auction sale contract. As Carolina Warehouse was not a successor in interest to the auction sale contract between Cornerstone and plaintiff, it was not commercially unreasonable for Carolina Warehouse to enter into a new auction sale contract with plaintiff.

Moyes' contention that the new price terms were commercially unreasonable, and thus plaintiff is not entitled to be paid out of the proceeds of the auction sale, is similarly unfounded. Moyes argues plaintiff has made no showing justifying its claims to the fee and that it was commercially unreasonable for Carolina Warehouse to agree to the change in fee terms.

As discussed above, after the sale of the note covering the debt owed by Ridgeway to Cornerstone, plaintiff was not under contract to conduct an auction sale of the Ridgeway equipment. Carolina Warehouse bought the note covering the debt owed by Ridgeway on 3 December 2004, and was free to contract with any party to conduct the auction sale of the Ridgeway equipment. As indicated in an e-mail from Mike Gurkin to Cornerstone's attorney, plaintiff had already prepared advertising for the auction sale, developed contacts with potential buyers, and was prepared to conduct the auction sale on 16 December 2004:

> I can hold off on the newspaper ads to next Wednesday. I prefer not to hold off on the flyers that long, however I will hold off and see what is going on Monday. I have all my drafts and quotes back from the larger papers and have done all the lay out work so we can turn it out in a day. My guess is one of the people that I have talked to since Monday is involved with Ridgeway and did not like it when I told them that I felt like their [sic] was 3 to 5 real players in the game. Combine that with the conversations you and Robert have had with people and reality hits hard.

In light of plaintiff's readiness to proceed immediately to conduct the auction sale, it was reasonable for Carolina Warehouse to enter into the auction sale contract with plaintiff. Moyes has forecast no

evidence to the contrary other than the fact that the new contract resulted in a higher fee paid to plaintiff. Moyes argues that if he had purchased the equipment pursuant to a sale under the terms of the Cornerstone auction sale contract, plaintiff would have been entitled to a fee of $7,500 plus advertising expense. However, because the sale was conducted under the terms of the Carolina Warehouse auction sale contract, plaintiff is entitled to a fee of $135,825. Moyes' argues the change in terms resulting in plaintiff's higher fee is commercially unreasonable. Moyes' argument is misplaced.

While plaintiff discussed in an e-mail with Cornerstone's attorney a price term treating guarantors the same as Cornerstone, the final contract made no such distinction. Under the terms of the Cornerstone auction sale contract, plaintiff would have been entitled to a fee of "$7,500 *and 10% of the amount bid over [Cornerstone's] last bid if a third party purchases the equipment*[.]" Under the terms of the Carolina Warehouse auction sale contract, plaintiff is entitled to a fee of "$10,000 or 10% of the Auction price above 2.4 million, whichever is greater if anyone other that Carolina Warehouses [sic] Inc. purchases it at the sale." Given that the debt owed to Cornerstone by Ridgeway was $2,360,000, Cornerstone had an interest in assuring that a third party did not purchase the equipment for less than that amount. Thus, the fee plaintiff would have received under either auction sale contract was potentially similar.

Plaintiff has presented evidence showing the commercial reasonableness of both the contract it executed with Carolina Warehouse to conduct an auction sale of the Ridgeway equipment and the sale itself. Moyes has not forecast any evidence demonstrating that he will be able to make out a *prima facie* case that the contract for sale was commercially unreasonable and sets forth no specific facts showing that there is a genuine issue for trial. These assignments of error are overruled.

Affirmed.

Judges TYSON and LEVINSON concur.