### STATE v. R. T. DALTON ET AL.

(Filed 9 December, 1914.)

**Indictment—Conspiracy—Competition—Systematic Abuse—Common Law— Interpretation of Statutes.**

An indictment charging that the employees of a rival company in the sale of lawful commodities had combined together to break up their competitor's business by systematically following its salesmen from house to house and place to place and to so abuse, vilify, and harass them as to deter them in their lawful business and to break up their sales; that they falsely represented that their rival company was composed of a set of thieves and liars, endeavoring to cheat and defraud the people, etc., charges a conspiracy indictable at common law, which is not restricted or abridged by statute 33 Edward I., or repealed by chapter 41, Laws 1913; and a motion to quash the indictment should not be granted. *S. v. Van Pelt*, 136 N. C., 633, cited and distinguished.

APPEAL by State from *Harding; J.,* at September Term, 1914, of LINCOLN.

The defendants were indicted in the following bill:

The grand jurors for the State upon their oaths do present, that R. T. Dalton, R. C. Manley, T. R. Lacey, G. W. Gardner, J. B. Haney, and A. G. Yelton, then claiming to be working for and employed by the Wrought Iron Range Company, with force and arms at and in this county did unlawfully and willfully conspire together to break up or "bust up" a rival company, towit, the St. Louis Steel Range Company of St. Louis, Mo., and did unlawfully and willfully conspire and agree together to interfere with and break up any sales made or sought to be made by C. F. Graves, Bud Canada, J. A. Vick, B. O. Dell, employees of and working for the said St. Louis Steel Range Company, and to abuse, vilify, and "knock" the said St. Louis Steel Range Company and its salesmen, agents, and servants, to the end that said sales could not be made and to the end that the public would cease to buy from the said St. Louis Steel Range Company any of its goods, wares, and merchandise, and did unlawfully and willfully conspire and agree together to so follow up and keep under constant and annoying surveillance the above named servants and employees of the said St. Louis Steel Range Company and to so abuse, vilify, and harass them that the said St. Louis Steel Range Company's employees would be deterred from working for said company, and would be prevented from making sales and prevented from carrying on their legitimate business in this State; and the said defendants, in order to carry out their said conspiracy as above related, did unlawfully and willfully follow up the said employees of said St. Louis Steel Range Company from town to town and from place

to place, and from road to road and from house to house, and did keep the employees of the said St. Louis Steel Range Company (it being a company engaged in selling steel ranges by model through its salesmen and employees), and did keep them under constant and annoying surveillance and vilify and abuse them and their company to various persons throughout this county and State, and did vilify and abuse and make light of the goods, wares, and merchandise the said St. Louis employees were attempting to sell; and in furtherance of their said conspiracy the said defendants did at various times and places slander, vilify, and run down and abuse the St. Louis Steel Range Company and say to various persons that the said St. Louis Steel Range Company was composed of a set of liars and thieves and that the agents and employees of the said St. Louis Steel Range Company were a set of liars and thieves who were trying to cheat and defraud the people, and that they (the defendants) were out to protect the people from being defrauded by the agents and employees of the said St. Louis Steel Range Company, which said statements so made by the defendants were slanderous and false and injurious to said St. Louis Steel Range Company and to its agents and employees, and which said false statements were made in furtherance of their said conspiracy to interfere with sales of said St. Louis Steel Range Company or with sales the agents and servants and employees of said St. Louis Steel Range Company were making or trying to make, all to the end that the defendants might, if possible, drive the St. Louis Steel Range Company and its agents and employees from the business field and leave it clear for the agents and employees of the Wrought Iron Range Company; and they further say that said acts and conspiracy were done at and in Lincoln County, N. C., and at other places in this State, on or about the _____ day of June, 1914, and were done contrary to law and against the peace and dignity of the State.

NEWLAND, *Solicitor.*

The defendants moved to quash the bill because it charged no criminal offense, which was granted, and the State appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*C. A. Jonas and W. C. Feimster for defendants.*

CLARK, C. J.   There was error in quashing the bill.   It charged a conspiracy at common law, and this offense is not restricted or abridged by the statute of 33 Edward I., *Gold Brick case,* 129 N. C., 584; nor does chapter 41, Laws 1913, generally known as the "Antitrust Law," repeal the common law in this respect.   A conspiracy is generally defined to be "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way."

The defendants rely upon *S. v. Van Pelt,* 136 N. C., 633, where this Court held that it was not a conspiracy for laborers to notify an employer that he would not be considered in sympathy with organized labor if he employed others than union men, nor if he retained nonunion men with whom he had already contracted a year in advance; and upon refusal of such employer to discharge nonunion men and refusing to agree to employ only union men, notice had been given that at a meeting of the carpenters and joiners the attitude of the employer was declared unfair towards organized labor, and that no union carpenter would work any material from his shop after a given date.

That case has no bearing upon the present. The opinion in *Van Pelt's case* is a very full discussion of the rights of laborers by *Mr. Justice Connor,* and it was held that the conduct above cited was not unlawful and did not constitute a conspiracy. It was said that "Organized labor or labor organizations are not unlawful. The prosecutor had no legal right to demand that he should be considered in sympathy with organized labor; therefore, he was not to be deprived of any legal right if he preferred to employ nonunion men, and the defendants had a legal right to consider him unsympathetic with organized labor if he exercised such right." The Court there pointed out that there was no intimidation by numbers or otherwise or any violence or fraud.

The Court in that case said: "May not men organize to promote their common interests, and, when such interests conflict with other interests, resort to lawful and peaceful means to secure the best results? It is clear that they may. Where, then, is the line which separates conduct which is lawful from that which is unlawful? The answer comes from *Chief Justice Shaw,* one of the wisest and most learned of American jurists: 'If it is to be carried into effect by fair or honorable or lawful means, it is, to say the least, innocent. If by falsehood or force, it may be stamped with the character of a criminal conspiracy.' "

In the present case the charge in the bill is of a conspiracy whose object was to break up a rival company and to drive it from the business field and leave it clear for the agents and employees of the company for whom the defendants were working, and that this conspiracy was to be carried out by the following means: To break up the sales made by the agents of the rival company; to abuse that company; to vilify it; to follow up its agents from town to town, from road to road, from house to house, and vilify and abuse them; to slander, vilify, and run down that company; to charge falsely that such rival company was composed of a set of thieves and liars; and to say falsely that the agents of that company were a set of thieves and liars who were trying to cheat and defraud the people.

A combination to use such means, reeking with fraud and falsehood, was a conspiracy at common law, and indictable as such. There is nothing in the opinion in *S. v. Van Pelt* which would protect from punishment the conspiracy to use such means for such a purpose. In *Van Pelt's case* there was simply a meeting of union laborers who requested an employer to employ only union labor, and, when he refused to do so, gave notice that they considered him not in sympathy with union labor. There was no intimidation, no false representations, no agreement to systematically break up the sales or business of such employer, nor to track down his agents with abuse and vilification, nor to charge him as a thief and liar, nor that his agents were thieves and liars trying to cheat and defraud the people. The charge in the present bill has no analogy to the charge made by the indictment in *S. v. Van Pelt.*

The acts here charged constituted a conspiracy indictable at common law, and the order quashing the bill was improvidently allowed. A combination to injure the business of another by a resort to systematic falsehood and misrepresentations, as here charged, has not been made lawful by any statute nor recognized as permissible by the decision of any court. The judgment quashing the bill is

Reversed.