USA Trouser, S.A. de C.V. v. Williams, 2016 NCBC 54.

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
| | | SUPERIOR COURT DIVISION |
| COUNTY OF GUILFORD | | 14 CVS 790 |

USA TROUSER, S.A. de C.V.,

    Plaintiff,

  v.

JAMES A. WILLIAMS;
NAVIGATORS INSURANCE
COMPANY; and NAVIGATORS
MANAGEMENT COMPANY, INC.,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER & OPINION**

{1}  THIS MATTER is before the Court on three motions to dismiss: (1) Defendant James A. Williams's Motion to Dismiss Plaintiff's Amended Complaint ("Williams's Motion to Dismiss"); (2) Defendant Navigators Insurance Company's Motion to Dismiss ("Navigators Insurance's Motion to Dismiss"); and (3) Defendant Navigators Management Company, Inc.'s Motion to Dismiss ("Navigators Management's Motion to Dismiss"). For the reasons expressed below, Williams's Motion to Dismiss is GRANTED in part and DENIED in part, Navigators Insurance's Motion to Dismiss is GRANTED, and Navigators Management's Motion to Dismiss is GRANTED.

   *Law Offices of Matthew K. Rogers, PLLC by Matthew K. Rogers, and Nexsen Pruet, PLLC by Christine L. Myatt for Plaintiff USA Trouser, S.A. de C.V.*

   *Bradley Arant Boult Cummings LLP by Dana C. Lumsden and Katherine M. Kliebert for Defendant James A. Williams.*

   *Cozen O'Connor by Tracy L. Eggleston and Angelo G. Savino (pro hac vice) for Defendants Navigators Insurance Company and Navigators Management Company, Inc.*

Gale, Chief J.

# I. INTRODUCTION

{2} Plaintiff USA Trouser, S.A. de C.V. ("USA Trouser") brings multiple claims against Defendants James A. Williams ("Williams"), Navigators Insurance, Company ("Navigators Insurance") and Navigators Management Company, Inc. ("Navigators Management"). The claims arise out of a relationship between USA Trouser and International Legwear Group, Inc. ("ILG"), a company for which Williams served as CEO and director and for which Navigators Insurance provided director and officer liability insurance. In part, USA Trouser seeks to compel Navigators Insurance and Navigators Management to pay the amount of a default judgment entered against ILG in USA Trouser's favor in a prior federal action.

{3} USA Trouser is a Mexican textile company that had contracted to supply socks to ILG for resale in the United States. USA Trouser claims that ILG, without disclosing its dire financial situation, induced USA Trouser to continue supplying socks to ILG on credit. ILG ultimately sold many of its assets, delivered the proceeds to its secured creditors, and failed to honor its commitments to pay USA Trouser. USA Trouser sued ILG and three individuals that had served as ILG's directors or officers in the United States District Court for the Western District of North Carolina. USA Trouser obtained a default judgment against ILG, and claims against the individual defendants in that action were either dismissed by summary judgment or settled. Williams was not a party to that action.

{4} In this action, USA Trouser brings similar claims against Williams to those that it brought in the federal case. USA Trouser also brings claims against Navigators Insurance and Navigators Management that are related to the insurance companies' actions during the federal case and after the entry of default judgment against ILG. Williams asserts that USA Trouser's fraud claim is not adequately alleged and that the rest of the claims against him are barred by collateral estoppel. Navigators Insurance asserts that USA Trouser does not have standing to bring its claim, and even if it did, ILG's policy does not cover the liability established by the default judgment. Navigators Management asserts that it has no contractual obligation to USA Trouser.

{5}     For the reasons expressed below, the Court limits certain claims but allows them to proceed against Williams, dismisses USA Trouser's claims against Williams for actual fraud, negligent misrepresentation, fraudulent and/or negligent failure to perform statutory duties, and conspiracy to defraud, and dismisses all claims against Navigators Insurance and Navigators Management.

## II.     LEGAL STANDARD

{6}     Under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rules"), the Court assumes the facts alleged in USA Trouser's First Amended Complaint to be true and views them in the light most favorable to USA Trouser.[1] *See Tarrant v. Freeway Foods of Greensboro, Inc.*, 163 N.C. App. 504, 508, 593 S.E.2d 808, 811 (2004).  Because the First Amended Complaint refers to and depends on certain documents, the Court may consider those documents without converting the Rule 12(b)(6) motions into motions for summary judgment.  *See Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009).  USA Trouser may not recover if the First Amended Complaint lacks sufficient facts to support its claims or discloses a fact that necessarily defeats its claims.  *See Pinney v. State Farm Mut. Ins. Co.*, 146 N.C. App. 248, 253, 552 S.E.2d 186, 190 (2001).

## III.     THE PARTIES

{7}     USA Trouser is a Mexican sock and hosiery manufacturing company with a principal place of business in Mexico.

{8}     Navigators Insurance is a New York company that has offices in New York City, New York, and Stamford, Connecticut, Navigators Insurance and that provides director and officer ("D&O") liability insurance to North Carolina residents.

---

[1] Williams did not oppose USA Trouser amending its complaint to state its fraud and conspiracy-to-defraud claims with greater specificity, subject to his right to challenge the claims after amendment. The Court permitted USA Trouser to amend his fraud-based claims.  USA Trouser then filed a substantially altered Second Amended Complaint on May 11, 2015.  Williams moved to strike the Second Amended Complaint on the basis that the amendments exceeded the Court's grant of permission to USA Trouser to stating the fraud claims with greater specificity. The Court has today granted Williams's motion to strike by separate order and considers only the First Amended Complaint when ruling on the pending motions in this Order & Opinion.

{9}     Navigators Management is a New York company that has places of business in New York City, New York, and Stamford, Connecticut, and that is registered to do business in North Carolina.

{10}     Williams is or was a resident of Guilford County, North Carolina, and was formerly a director, the president, and the CEO of ILG.

{11}     ILG was a Virginia corporation that had its principal place of business in North Carolina before it was dissolved in 2012.  Williams remains ILG's registered agent in North Carolina.

## V.     BACKGROUND

### A. General Background

{12}     USA Trouser manufactured and shipped socks to ILG, and ILG resold the socks to Walmart and Payless Shoes.

{13}     Williams became ILG's CEO in September 2010.  John Sanchez ("Sanchez) was ILG's chief financial officer and Bill Sheely ("Sheely") was ILG's chief operating officer.

{14}     ILG purchased D&O liability insurance from Navigators Insurance, and Navigators Insurance issued policy number PH10DOL616113IV (the "ILG Policy"), which insured ILG for the period of December 31, 2010, through December 31, 2017.

{15}     ILG was in breach of its loan agreements with CapitalSource Finance, LLC ("CapSource") and was operating under a forbearance agreement with CapSource when Williams became ILG's CEO.  ILG's financial position declined after Williams became CEO, and by February 2011, ILG was in default of at least one of its forbearance covenants.  CapSource notified ILG on March 8, 2011, that it would no longer continue to fund ILG's operations.  ILG and its officers did not disclose ILG's financial situation to USA Trouser.

{16}     By the end of May 2011, ILG was behind in its payments to USA Trouser for shipments that ILG had already received.  Sanchez and Sheely traveled to Mexico to meet with USA Trouser executives on June 2, 2011, at which time they

promised that ILG would make minimum weekly payments of $100,000.00 to pay down past-due invoices and that ILG would pay the additional amount necessary to cover new invoices. ILG did not honor this promise.

{17}     On July 18 or 19, 2011, Williams told ILG employees that ILG was unable to meet its financial obligations and that CapSource would not continue to finance ILG. On August 11, 2011, Williams signed an asset-purchase agreement to sell all of ILG's assets. The asset-purchase agreement specified that the asset purchaser would not assume any of ILG's contractual liabilities. USA Trouser received no proceeds from the sale of ILG's assets. The Virginia State Corporation Commission terminated ILG's corporate existence on April 30, 2012.

## B. The Federal Lawsuit and the ILG Default Judgment

{18}     On September 6, 2011, USA Trouser initiated a lawsuit in North Carolina superior court (the "ILG Lawsuit") against ILG, Sheely, Sanchez, and the former chairman of ILG's board of directors, Scott Andrews ("Andrews"). USA Trouser brought eight claims: (1) breach of contract, (2) breach of fiduciary duty/constructive trust, (3) fraud/fraudulent concealment/negligent misrepresentation, (4) unfair and deceptive trade practices, (5) breach of implied covenants of good faith and fair dealing, (6) fraudulent and/or negligent failure to perform statutory duties, (7) conversion, and (8) fraudulent conveyance. *See USA Trouser, S.A. de C.V. v. Int'l Legwear Grp. Inc.*, No. 1:11-cv-00244-MR-DLH, 2012 U.S. Dist. LEXIS 177456, at *1–2 (W.D.N.C. Dec. 13, 2012), *aff'd in part, vacated in part, and remanded sub nom. USA Trouser, S.A. de C.V. v. Andrews*, 612 F. App'x 158 (4th Cir. 2015), *reh'g denied*, No. 14-402 (4th Cir. July 17, 2015). On September 21, 2011, the case was removed to the United States District Court for the Western District of North Carolina. *See id.* at *2.

{19}     ILG, Andrews, Sanchez, and Sheely each submitted the claims brought against them to Navigators.

{20}    Navigators engaged Bradley Arant Boult Cummings LLP ("Bradley Arant") to represent all of the defendants in the ILG Lawsuit and initially paid for the defense of all of the defendants.

{21}    On December 27, 2011, with ILG's authorization, Bradley Arant moved to withdraw as ILG's counsel. The district court granted the motion and directed ILG to retain new counsel within ten days. When ILG failed to comply, the district court struck ILG's Answer. The district court entered default against ILG on February 2, 2012, and the ILG Lawsuit continued against the individual defendants.

{22}    USA Trouser and the individual defendants filed cross-motions for summary judgment in the ILG Lawsuit on September 4, 2012.

{23}    On December 13, 2012, United States District Judge Martin Reidinger issued an opinion on the various motions for summary judgment ("District Court Order"). *See Int'l Legwear Grp., Inc.*, 2012 U.S. Dist. LEXIS 177456. In that opinion, he denied USA Trouser's motions for summary judgment in their entirety; granted summary judgment in favor of Andrews and dismissed all claims against him; denied summary judgment on USA Trouser's claims against Sanchez and Sheely for fraud and unfair-and-deceptive trade practices based on fraud; and granted summary judgment in favor of Sanchez and Sheely, dismissing the non-fraud-based claims brought against them. *Id.* at *36–37.

{24}    Later, Sanchez and Sheely made an offer of judgment to USA Trouser, which USA Trouser accepted, resulting in entry of judgment against Sanchez and Sheely in the amount of $277,185.82. Navigators Insurance paid the judgment.

{25}    On March 25, 2014, the district court entered default judgment against ILG totaling $1,993,856.48. *See USA Trouser, S.A. de C.V. v. Int'l Legwear Grp., Inc.*, No. 1:11-cv-00244-MR-DLH, 2014 U.S. Dist. LEXIS 39271, at *35–37 (W.D.N.C. Mar. 25, 2014). In that order, Judge Reidinger found that USA Trouser was entitled to damages of $655,256.16 on its breach of contract and fraud claims and that the damages arising from ILG's "fraudulent and deceptive acts" should be trebled to $1,965,768.48 under N.C. Gen. Stat. § 75-16 (2015). *Id.* at *26–27. Judge

Reidinger also awarded $27,858.00 in attorneys' fees and $230.00 for costs. *Id.* at *37.

{26} On April 29, 2015, USA Trouser appealed the District Court Order's dismissal of all claims against Andrews.

C. Proceedings in the Present Action and Further Developments in the ILG Lawsuit.

{27} USA Trouser filed its original Complaint in this action on June 2, 2014, initially bringing claims against only Williams.

{28} On June 20, 2014, USA Trouser sent Navigators a letter demanding that Navigators pay the default judgment plus any accrued post-judgment interest. Navigators received the demand letter on June 23, 2014. Navigators has not responded to the demand letter and has not paid the default judgment.

{29} The case was designated as a complex business case on July 3, 2014, and assigned to the undersigned on July 7, 2014.

{30} USA Trouser filed its First Amended Complaint on August 14, 2014, bringing the following claims against Williams: (1) breach of fiduciary duty and constructive fraud, (2) fraud, (3) fraudulent concealment, (4) negligent misrepresentation, (5) conspiracy to defraud, and (6) fraudulent and/or negligent failure to perform statutory duties. The First Amended Complaint also added Navigators Insurance and Navigators Management as Defendants, alleging claims against them for conspiracy to defraud, bad-faith claims-settlement practices, and unfair-and-deceptive trade practices ("UDTP").

{31} Williams's filed his motion to dismiss on September 15, 2014. Navigators Insurance and Navigators Management filed their motions to dismiss on October 17, 2014.

{32} The Court heard argument on the motions to dismiss on April 9, 2015. On April 21, 2015, the Court issued an Order permitting USA Trouser to amend its First Amended Complaint to state its fraud-based claims with greater particularity ("Amendment Order").

{33}    On May 5, 2015, the Fourth Circuit issued its opinion on USA Trouser's appeal of the District Court Order ("Fourth Circuit Opinion"), vacating Judge Reidenger's dismissal of USA Trouser's fiduciary duty and constructive trust claims, but affirming Judge Reidinger's dismissal of all of USA Trouser's other claims. *Andrews*, 612 Fed. App'x at 162.[2]

{34}    USA Trouser filed its Second Amended Complaint in the present action on May 11, 2015.

{35}    Williams filed his Motion to Strike on May 15, 2015, arguing that the Second Amended Complaint exceeded the scope of any amendment the Court allowed by the Amendment Order.

{36}    On October 7, 2015, two weeks before the remaining claims in the ILG Lawsuit were scheduled for trial in federal court, USA Trouser moved to remand those claims to North Carolina state court, to dismiss those claims with prejudice, or alternatively to consolidate the federal action with the present action before this Court. *See USA Trouser, S.A. de C.V. v. Int'l Legwear Grp., Inc.*, No. 1:11-cv-00244-MR-DLH, 2015 U.S. Dist. LEXIS 145517, at *2 (W.D.N.C. Oct. 27, 2015), *appeal docketed*, No. 16-1144 (4th Cir. Feb. 11, 2016). Judge Reidinger denied USA Trouser's motion in its entirety on October 27, 2015. *See id.*

{37}    Then, on October 30, 2015, the parties represented to the federal court that the remaining claims in the ILG Lawsuit had been settled, at the same time filing a memorandum of understanding ("MOU") that indicated that the parties also intended to settle the claims brought against Williams in this action. *See USA Trouser, S.A. de C.V. v. Andrews*, No. 1:11-cv-00244-MR-DLH, 2016 U.S. Dist. LEXIS 3038, at *1 (W.D.N.C. Jan. 11, 2016). A dispute arose regarding the parties' performance under the agreement, and Andrews filed a motion to enforce the MOU. *See id.* Judge Reidinger granted that motion on January 11, 2016. *Id.* at *4–5.

---

[2] Andrews subsequently petitioned the Fourth Circuit to rehear his appeal, and that petition was denied on July 17, 2015. *See Andrews*, No. 14-402.

USA Trouser then appealed that ruling and several others to the Fourth Circuit, where the appeal is still pending as of the date of this Order & Opinion.

{38}    All motions have been fully briefed and are ripe for decision.

## IV.    ANALYSIS

{39}    The Court first addresses the motions made by Navigators Insurance and Navigators Management and then addresses Williams's Motion to Dismiss.

{40}    USA Trouser makes three claims against Navigators Insurance and Navigators Management: (1) conspiracy to defraud, (2) bad-faith claims-settlement practices, and (3) UDTP.  Navigators Management and Navigators Insurance have made separate motions to dismiss the claims.

### A. Navigators Management's Motion to Dismiss

{41}    Navigators Management's Motion to Dismiss, brought pursuant to Rule 12(b)(6), argues that USA Trouser's claims for bad-faith claims-settlement practices and UDTP should be dismissed because Navigators Management was not a party to the ILG Policy, nor did it have any role in issuing the ILG Policy. Navigators Management also argues that the only other claim against it, conspiracy to defraud, has not been pleaded with adequate specificity to meet the requirements of Rule 9(b).

{42}    USA Trouser has not responded to Navigators Management's argument that it did not issue the ILG Policy, had no role in issuing the ILG Policy, and was not a party to the ILG Policy.  Rather, both in pleading and in briefing, USA Trouser mostly groups together its allegations against the two Navigators entities, referring to both simply as "Navigators."  Although the First Amended Complaint alleges a relationship between Navigators Insurance and Navigators Management, USA Trouser fails to plead or argue any basis as to why this relationship leads to Navigators Management's liability for bad-faith claims-settlement practices or UDTP.  Accordingly, Navigators Management's Motion to Dismiss should be granted as to those claims on this ground alone.

{43}   Alternatively, the grounds that the Court discusses below, which justify the dismissal of all claims against Navigator's Insurance, including the claim for conspiracy to defraud, would also inure to the benefit of Navigator's Management.  Hereafter, the Court refers to Navigators Insurance and Navigators Management collectively as "Navigators."

## B. Navigators Insurance's Motion to Dismiss

### 1. Conspiracy to Defraud

{44}   To successfully plead a conspiracy claim, a plaintiff must allege "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." *Muse v. Morrison*, 234 N.C. 195, 198, 66 S.E.2d 783, 784 (1951) (quoting *State v. Dalton*, 168 N.C. 204, 205, 83 S.E. 693, 694 (1914)).  With respect to USA Trouser's conspiracy-to-defraud claim against Navigators, USA Trouser alleges the following in its First Amended Complaint:

> 228. Navigators conspired with ILG's officers and directors to commit fraud on the court by intending to cause default to be entered against ILG purportedly for non-payment of legal fees, when Navigators intended to pay for the defense of co-defendants and when the ILG Policy covered ILG with regard to the acts and omissions of ILG's officers including Williams, and Navigators conspired to dissolve ILG without disposing of contingent or known liabilities of which Navigators was aware or reasonably should've been aware.
>
> . . .
>
> 230. Navigators are conspiring with Williams to avoid paying the [Default] Judgment despite facts that already establish liability of both be established and Trouser is entitled to attorney fees as damages relating thereto.
>
> 231. Navigators Insurance is conspiring with Navigators Management to avoid paying the Judgment in violation of North Carolina law.

(First Am. Compl. ¶¶ 228, 230–31.)  It is not clear whether USA Trouser predicates its conspiracy claim on constructive fraud, actual fraud, or fraudulent concealment, however "[a] claim for conspiracy to defraud cannot succeed without a successful

underlying claim for fraud." *Jay Grp., Ltd. v. Glasgow*, 139 N.C. App. 595, 599, 534 S.E.2d 233, 236 (2000).

{45} A constructive-fraud claim requires "(1) facts and circumstances creating a relation of trust and confidence; (2) which surrounded the consummation of the transaction in which the defendant is alleged to have taken advantage of the relationship; and (3) the defendant sought to benefit himself in the transaction." *Marketplace Antique Mall, Inc. v. Lewis*, 163 N.C. App. 596, 599, 594 S.E.2d 121, 124 (2004). To establish a claim for actual fraud, a plaintiff must show "(1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive him; (3) that defendant intended to deceive him; (4) that plaintiff was deceived; and (5) that plaintiff suffered damage resulting from defendant's misrepresentation or concealment." *Jay Grp. Ltd.*, 139 N.C. App. at 599, 534 S.E.2d at 236 (emphasis omitted) (quoting *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997)). A fraud claim that is based on the concealment of a material fact requires that the defendant have a duty to disclose that fact. *See Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976).

{46} Because USA Trouser alleges only that Navigators was involved in a civil conspiracy directly related to events that occurred during and after the ILG Lawsuit, the Court examines that timeframe and the circumstances surrounding the ILG Lawsuit to determine if the elements of a claim for fraudulent representation, fraudulent omission, or constructive fraud have been adequately pleaded.

{47} Viewing the facts in the light most favor to USA Trouser, the Court concludes that USA Trouser has not alleged facts that support that ILG, Williams, or Navigators owed a duty to disclose to USA Trouser any material facts pertaining to the ILG litigation, or that Navigators had any role, involvement in, or knowledge of ILG's dissolution. USA Trouser alleges no statements made by any of the Defendants during the relevant period upon which a claim for affirmative fraud might rest. Accordingly, USA Trouser has failed to adequately allege the

underlying fraudulent conduct required to state a claim for conspiracy to defraud against Navigators and these claims must be dismissed.

### 2. Bad-Faith Claims-Settlement Practices and UDTP Claims

{48} Navigators's primary argument is that USA Trouser's claims were not covered by the ILG Policy. Additionally, Navigators asserts that North Carolina, except in limited circumstances not present in this case, does not recognize a cause of action for UDTP brought by a third-party to an insurance contract against the liability insurer of an opposing party. The Court concludes that USA Trouser's UDTP claim against Navigators is not recognized in North Carolina and should therefore be dismissed.[3]

{49} USA Trouser seeks to assert both a claim under section 58-63-15(11) of the General Statutes and a UDTP claim. A violation of section 58-63-15(11) constitutes an unfair and deceptive trade practice under section 75-1.1 as a matter of law. *See Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 70–71, 529 S.E.2d 676, 682–83 (2000). North Carolina does not recognize a standalone private action against an insurance company for violations of section 58-63-15(11). *See Country Club of Johnston Cty, Inc. v. U.S. Fid. & Guar. Co.*, 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002).

{50} USA Trouser asserts that it may maintain its UDTP claim against Navigators because it was placed in privity of contract with Navigators as a result of securing a default judgment against ILG. The Court must reconcile two cases from the North Carolina Court of Appeals to determine whether USA Trouser may bring its claim. *See Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 472 S.E.2d 358 (1996); *Wilson v. Wilson*, 121 N.C. App. 662, 468 S.E.2d 495 (1996).

{51} In the first case, *Wilson v. Wilson*, an injured third party to a tortfeasor's insurance contract brought a UDTP claim against the tortfeasor's

---

[3] The Court need not consider circumstances from other cases where a judgment creditor may have taken steps to bring a claim in the right of the policyholder, such as requesting assignment or initiating other legal proceeding. The Court also need not reach the issue of whether the policy's insuring provisions extend to the liability on which the default judgment is based.

insurer, before judgment in the underlying action between the injured third party and the tortfeasor, for bad-faith refusal to settle. 121 N.C. App. at 663, 468 S.E.2d at 496. Proceeding on the earlier version of North Carolina's UDTP statute, in determining that "a private right of action under [section 58-63.15] and [section 75-1.1] may not be asserted by a third-party claimant against the insurer of an adverse party," the North Carolina Court of Appeals noted that the plaintiff was a third-party stranger to the insurance contract and was not in privity with the insured. *Id.* at 665, 468 S.E.2d at 497. The court further noted that most states that have considered this issue have not allowed that type of claim. *Id.* at 665–66, 468 S.E.2d at 497–98. The court of appeals summarized the two primary reasons for its decision:

> First, allowing such third-party suits against insurers would encourage unwarranted settlement demands, since plaintiffs would be able to threaten a claim for an alleged violation of [section 58-63-15(11)] in an attempt to extract a settlement offer.
>
> . . .
>
> Second, allowing a third-party claim against the insurer of an adverse party for violating [section 58-63-15(11)] may result in a conflict of interest for the insurance company. Upon defending its insured, the insurer has a duty to act diligently and in good faith to its insured. The insurer has a duty to safeguard the interests of its insured. Allowing a third-party action because of a violation of [section 58-63-15(11)] would require the insurer to also act in the best interests of the party adverse to its insured. Such a result would likely put the insurer in a position of conflict with its insured—the party adverse to the third party.

*Id.* at 666–67, 468 S.E.2d at 498.

{52}    That same year, in *Murray v. Nationwide Mutual Insurance Co.*, the court of appeals created a carve-out to the *Wilson* prohibition on third-party UDTP claims against insurers. *See* 123 N.C. App. at 14–16, 472 S.E.2d at 365–66. In *Murray*, the plaintiff obtained a judgment against a tortfeasor for injuries resulting from a car accident and then, after the tortfeasor's insurer repeatedly placed conditions on its payment of the judgment, pursued a claim against the insurer based on section 58-63-15(11). *Id.* at 4–7, 472 S.E.2d at 359–61. There was no

dispute in *Murray* that the claim underlying the judgment fell within the insuring provisions of the insurance contract.

{53} The court of appeals held that the *Wilson* rule, which prohibits a UDTP action against an insurer by a stranger to the insurance contract, did not preclude the *Murray* plaintiff's claim because the Murray plaintiff was an intended third-party beneficiary of the insurance contract, placing the plaintiff in contractual privity with the insurer. *Id.* at 14–15, 472 S.E.2d at 365–66.

{54} In reaching this result, the court of appeals, recited the well-settled rule in North Carolina that a party injured in an automobile accident is an intended third-party beneficiary of the tortfeasor's automobile insurance policy, which is issued with the express contemplation that the mandatory liability insurance coverage inures to the benefit of other motorists. *Id.* at 15, 472 S.E.2d at 366; *see also Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 440–41, 238 S.E.2d 597, 603–04 (1977) (holding that a car-accident victim's rights against an insurer are statutory and become absolute when the victim is injured by the insured). Accordingly, the judgment claimant in *Murray* was deemed to have sufficient privity of contract as an intended third-party beneficiary to assert a claim arising under the insurance contract. *See Murray*, 123 N.C. App. at 15, 472 S.E.2d at 366 ("Therefore, the instant plaintiff is in contractual privity with [the insurer], and for this reason alone, is not bound by the third-party restrictions set forth in *Wilson*."); *see also Prince v. Wright*, 141 N.C. App. 262, 269–70, 541 S.E.2d 191, 197 (2000) (noting that a third party generally cannot directly sue the insurer of an opposing party unless that third party is an intended beneficiary of the insurance contract). The court of appeals noted that its holding was strengthened by the fact that the conduct underlying the UDTP claim occurred post-judgment. *Id.* at 16, 472 S.E.2d at 366.

{55} *Murray*'s reliance on a finding that the claimant had rights as an intended third-party beneficiary comports with general contract doctrine, which allows a third party to bring suit on a contract if the party shows "(1) the existence of a contract between two other persons; (2) that the contract was valid and

enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 79 N.C. App. 81, 86, 339 S.E.2d 62, at 66 (1986) (quoting *Leasing Corp. v. Miller*, 45 N.C. App. 400, 405–06, 263 S.E.2d 313, 317 (1980)), *rev'd on other grounds*, 322 N.C. 200, 367 S.E.2d 609 (1988). Anyone for whose direct benefit a liability insurance policy is issued may maintain an action directly against the insurer for any loss suffered. *Carolina Transp. & Distrib. Co. v. Am. Alliance Ins. Co.*, 214 N.C. 596, 601, 200 S.E. 411, 414 (1938).

{56} However, it does not follow that everyone seeking benefits under an insurance policy qualifies as an intended third-party beneficiary, even where a judgment against an insured has been obtained. To qualify as an intended third-party beneficiary, "[i]t is not enough that the contract, in fact, benefits the [third party], if, when the contract was made, the contracting parties did not intend it to benefit the [third party] directly." *Country Boys Auction & Realty Co. v. Carolina Warehouse, Inc.*, 180 N.C. App. 141, 146, 636 S.E.2d 309, 313 (2006) (quoting *Holshouser v. Shaner Hotel Grp. Props.*, 134 N.C. App. 391, 399–400, 518 S.E.2d 17, 25 (1999)). North Carolina courts have determined that certain parties are intended third-party beneficiaries of certain types of insurance contracts as a matter of law, because those parties were intended to benefit from the insurance. *See, e.g.*, *Chantos*, 293 N.C. at 440–41, 238 S.E.2d at 604 (holding that the automobile insurance required by the Financial Responsibility Act is intended for the direct benefit of the injured victims); *Carolina Transp. & Distrib. Co.*, 214 N.C. at 601, 200 S.E. at 414 (holding that an insurance policy covering goods held by a common carrier in a bailor–bailee-type relationship is intended for the direct benefit of the owner of the insured goods).

{57} The express terms of an insurance policy may also convey a right to a third party to bring an action on the contract. *See Hall v. Harleysville Mut. Cas. Co.*, 233 N.C. 339, 340, 64 S.E.2d 160, 161 (1951) (permitting a third party to bring a claim against the insurer of an adverse party when the terms of the insurance

policy allowed a third-party cause of action to be brought against the insurer after the third party has first obtained a judgment against the insured).

{58} Applying these principles, the Court concludes that USA Trouser was neither the insured nor an intended third-party beneficiary of the ILG Policy. The Court is not aware of a policy justification that would require a court to deem that a company's general liability or D&O liability insurance coverage inures to the direct benefit of injured trade creditors like USA Trouser. The policy considerations pertaining to automobile liability insurance policies do not apply in this commercial context.

{59} The Court concludes that USA Trouser's UDTP claim against Navigators is not a recognized claim in North Carolina.

## C. Williams's Motion to Dismiss

{60} Williams's Motion to Dismiss is brought pursuant to Rules 9(b) and 12(b)(6). Williams first disputes whether USA Trouser has alleged a minimal basis on which to pierce ILG's veil so as to impose personal liability on him for the default judgment entered against ILG. Williams further argues that the following claims against him are, in any event, barred by collateral estoppel: (1) breach of fiduciary duty, (2) constructive fraud, (3) fraudulent concealment, (4) negligent misrepresentation, and (5) fraudulent and/or negligent failure to perform statutory duties. Alternatively, Williams argues USA Trouser has failed to plead its fraud claim with sufficient particularity to inform Williams of the basis of the claim made against him and that the doctrine of intracorporate immunity bars USA Trouser's conspiracy-to-defraud claim. Finally, Williams seeks to dismiss the UDTP claim against him because it is derivative of the other claims that should be dismissed.

### 1. USA Trouser Has Failed to Allege a Basis on Which to Impose Personal Liability on Williams for the Default Judgment Against ILG.

{61} USA Trouser has not directly responded to Williams's assertion that it has failed to plead a basis for piercing ILG's corporate veil. "The doctrine of piercing the corporate veil is not a theory of liability. Rather, it provides an avenue

to pursue legal claims against corporate officers or directors who would otherwise be shielded by the corporate form." *Green v. Freeman*, 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013). USA Trouser argues that the default judgment against ILG collaterally estops Williams from disputing his liability for USA Trouser's claims and alternatively that Williams is responsible for the liability established by the default judgment as a tortfeasor.

{62} USA Trouser argues that the default judgment against ILG estops Williams from arguing against his liability, even though Williams was not a party to the federal action in which the default judgment was entered. The collateral estoppel doctrine does not permit the liability established by the default judgment against ILG to be imputed to Williams without Williams first having had an opportunity to defend against that liability. *See Rymer v. Estate of Sorrells*, 127 N.C. App. 266, 269, 488 S.E.2d 838, 840 (1997) (noting that nonmutual, offensive collateral estoppel applies where "a plaintiff seeks to foreclose a defendant from relitigating an issue that the defendant has previously litigated unsuccessfully in another action against a different party"); *see also Sartin v. Macik*, 535 F.3d 284, 289 (4th Cir. 2008) (holding that, under North Carolina law, a default judgment does not have collateral estoppel effect, even though it might have res judicata effect). Even if the corporation's liability has been established by judgment, if the officer's liability to the injured party has not already been established, the injured party cannot assert collateral estoppel against the officer based on the judgment against the corporation. *See State Farm Mut. Auto. Ins. Co. v. Holland*, 324 N.C. 466, 471, 380 S.E.2d 100, 103 (1989).

{63} USA Trouser separately argues that it has alleged a basis for finding Williams liable for the judgment because ILG and Williams were joint tortfeasors. An officer of a corporation may be held individually liable for his own torts. *Forbes v. Par Ten Grp., Inc.*, 99 N.C. App. 587, 596, 394 S.E.2d 643, 648 (1990). The injured party may hold either the corporation or the officer liable for the wrongful acts or omissions an officer acting within the scope of his authority, or the party may hold them both liable as joint tortfeasors. *Id.* But a determination that a

corporation is liable does not necessarily also indicate that the corporation's officer committed a separate tort for which personal liability should be imposed against the officer. *See Holland*, 324 N.C. at 471, 380 S.E.2d at 103 (noting that collateral estoppel did not establish a defendant's joint and several liability where the defendant's liability had never been established because he was not a party to the earlier action and had not been made a third-party defendant by the original defendant). USA Trouser must first prove that Williams committed a tortious act. *Id.* Without more, the entry of default judgment against ILG does not meet the required showing.

## 2. <u>Collateral Estoppel Bars or Limits Most of USA Trouser's Claims Against Williams.</u>

{64}     Williams argues that collateral-estoppel effect of the District Court Order precludes USA Trouser's claims for breach of fiduciary duty, constructive fraud, fraudulent concealment, negligent misrepresentation, and fraudulent or negligent failure to perform statutory duties against him individually. The basis of Williams's argument was undercut, in part, when the Fourth Circuit Opinion vacated Judge Reidinger's grant of summary judgment on certain of USA Trouser's claims that are based on a finding that ILG's directors owed USA Trouser a limited duty.

{65}     Williams acknowledges that the Fourth Circuit Opinion precludes his ability to rely on collateral estoppel regarding USA Trouser's claims for breach of fiduciary duty, fraud, and constructive fraud, as well as the UDTP claim to the extent that it relies on those underlying claims. On the other hand, it is difficult to discern the scope of USA Trouser's various arguments. It appears that USA Trouser seeks to avoid Williams's defensive use of collateral estoppel through an effort to distinguish *Thomas M. McInnis & Associates, Inc. v. Hall*, the case in which the North Carolina Supreme Court adopted nonmutual collateral estoppel. 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986). USA Trouser also argues that the ILG Lawsuit should have no preclusive effect on USA Trouser's claims against Williams because he remained ILG's CEO and president for nine months after USA

Trouser filed its complaint in the federal action. Finally, USA Trouser alleges that it did not have a full and adequate opportunity to litigate the issues in the ILG Lawsuit and that Judge Reidinger's opinion was flawed as to both the law and the facts of the federal case. As a result, USA Trouser argues, it should not be estopped from litigating those issues in this matter. The Court has fully considered USA Trouser's arguments as the Court understands them, and finds them to be without merit.

### a. General Principles Regarding Collateral Estoppel

{66} The doctrine of collateral estoppel serves to prevent relitigation of issues that were actually litigated and necessary to the outcome of a prior-litigated action. *Id.* at 428, 349 S.E.2d at 557. The doctrine applies where issues that have been fully litigated in a federal court are presented in a subsequent state court action. *Nicholson v. Jackson Cty. Sch. Bd.*, 170 N.C. App. 650, 654–55, 614 S.E.2d 319, 322 (2005). The party asserting collateral estoppel bears the burden of proving that the elements of collateral estoppel have been met. *Powers v. Tatum*, 196 N.C. App. 639, 642, 676 S.E.2d 89, 92 (2009).

> To carry this burden, the moving party must show: (1) a prior suit resulting in a final judgment or decree; (2) between identical parties or those in privity; (3) involving one or more identical issues; (4) that the specific issue was litigated and necessary to the prior judgment; and (5) that the specific issue was actually determined.

*Id.*

{67} It is now well established in North Carolina that the parties to the two actions need not be identical when estoppel is asserted defensively. *See Mays v. Clanton*, 169 N.C. App. 239, 241, 609 S.E.2d 453, 455 (2005).

### b. Williams Has Met His Initial Burden of Proving the Elements of Collateral Estoppel.

{68} The Court concludes that Williams has met his burden of establishing the required elements of collateral estoppel.

{69}    First, the District Court Order as to the individual defendants became a final order when Judge Reidinger entered default judgment against ILG, resolving all remaining claims.  *See* Fed. R. Civ. P. 54(b); N.C. R. Civ. P. 54(b).

{70}    Second, even though Williams was not a party to the ILG Lawsuit, USA Trouser had a full and fair opportunity during the ILG Lawsuit to litigate the issues related to any liability of ILG's officers and directors.  *See Mays*, 169 N.C. App. at 241, 609 S.E.2d at 455 (noting that application of nonmutual collateral estoppel is proper, even by a party that was not a party or in privity with a party in the prior action, when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the same issues).  USA Trouser cannot avoid application of estoppel by arguing in this separate action that it did not have fair opportunity to litigate in the federal action.  "An issue is 'actually litigated,' for the purposes of collateral estoppel or issue preclusion, if it is properly raised in the pleadings or otherwise submitted for determination and is in fact determined."  *Propst v. N.C. Dep't Health & Human Servs.*, 234 N.C. App. 165, 168, 758 S.E.2d 892, 895 (2014) (quoting *Williams v. Peabody*, 217 N.C. App. 1, 6, 719 S.E.2d 88, 93 (2011)).  Judge Reidinger's discussion and findings regarding the nature of the business relationship between USA Trouser and ILG are too numerous to recount, but they make clear that issues USA Trouser now raises against Williams were actually litigated.

{71}    Third, USA Trouser is attempting to relitigate issues in this action that are identical to those presented to Judge Reidinger, solely because Williams was not a defendant in the ILG Lawsuit.  Many of USA Trouser's claims in this matter against Williams hinge on an alleged duty between ILG and its directors and officers, and USA Trouser.  The issues that Judge Reidinger and the Fourth Circuit decided related primarily to the duty, or lack of duty, owed by ILG's directors and officers to USA Trouser.  *See Andrews*, 612 Fed. App'x. at 160–61; *Int'l Legwear*, 2012 U.S. Dist. LEXIS 177456, at *22–26.  Those issues were necessary to the District Court Opinion, and were "in fact, determined" by Judge Reidinger.  *Propst*, 234 N.C. App. at 168, 758 S.E.2d at 895 (citation omitted).

Though the Fourth Circuit subsequently determined that certain of USA Trouser's claims should instead proceed to trial, such a holding does not prevent Judge Reidinger's decision from having a preclusive effect as to other issues underlying USA Trouser's claims. *See Thomas M. McInnis & Assocs.*, 318 N.C. at 431, 349 S.E.2d at 558.

{72}    Neither can USA Trouser avoid the preclusive effect of the District Court Order by arguing that the district court erred in its decision. Even if a judgment contains errors of fact or law, the judgment maintains its collateral-estoppel effect until it is reversed or vacated. *See State v. Summers*, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000) ("[W]hen a fact has been agreed upon or decided in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed." (alteration in original) (quoting *King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E.2d 799, 804 (1973))).

{73}    USA Trouser's argument that Williams remained CEO and President for nine months after USA Trouser filed its complaint is irrelevant to the estoppel effect of the federal judgment, at least to the extent that USA Trouser's claims are predicated on actions taken by Williams and ILG before USA Trouser filed its complaint in the ILG Lawsuit. Any allegations against Williams that are based on actions that have occurred since that time relate to a conspiracy claim arising from Navigators's failure to pay the default judgment, but the Court has dismissed that claim for other reasons.

{74}    Having concluded that Williams has met his burden of proving the elements of collateral estoppel, the Court now analyzes each claim individually to determine that collateral estoppel serves to limit certain claims and bar others.

     c.   <u>USA Trouser's Breach-of-Fiduciary-Duty and Constructive-Fraud Claims Must Be Limited as to Their Potential Scope.</u>

{75}    USA Trouser's claims for breach of fiduciary duty and constructive fraud both rely on Williams owing a fiduciary duty to USA Trouser. *See Dalton v.*

*Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) ("For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties."); *Highland Paving Co., LLC v. First Bank*, 227 N.C. App. 36, 42, 742 S.E.2d 287, 292 (2013) (noting that, to establish constructive fraud, the plaintiff must show that the defendant owes the plaintiff a fiduciary duty, breached that duty, and sought to benefit himself in the transaction).

{76} In the District Court Order, Judge Reidinger noted that, "[a]t best, USA Trouser was an unsecured creditor of ILG," and that "[g]enerally, corporate directors do not owe a fiduciary duty to creditors of the corporation." *Int'l Legwear Grp., Inc.*, 2012 U.S. Dist. LEXIS 177456, at *22. Judge Reidinger continued, noting that courts have recognized an exception to that general rule and have found that directors owe a fiduciary duty to creditors under circumstances amounting to a dissolution of the corporation. *Id.* at *23. However, Judge Reidinger next found that ILG's directors and officers were "prosecuting ILG's business in good faith," and that a consideration of those actions superseded other factors that indicated that ILG was dissolving. *See id.* at *23–24 (quoting *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 31, 560 S.E.2d 817, 825 (2002)). Judge Reidinger further found that, even if Sanchez, Sheely, and Andrews owed a fiduciary duty to USA Trouser, there was no breach of that duty, because they were permitted to prefer ILG's secured creditors over USA Trouser, which was an unsecured creditor. *Id.* at *24–25. On these bases, Judge Reidinger dismissed USA Trouser's claims for breach of fiduciary duty and constructive fraud, which were based on the existence of a fiduciary duty. *Id.* at *26.

{77} On appeal, the Fourth Circuit found that "genuine issues of material fact remain concerning whether ILG was winding-up or dissolving and, thus, whether a creditor–director fiduciary relationship existed." *Andrews*, 612 F. App'x. at 161. The Fourth Circuit agreed with Judge Reidinger that the forced liquidation of ILG's assets and distribution of the proceeds to ILG's primary lender could not form the basis of any breach. *Id.* The Fourth Circuit then noted that summary judgment on USA Trouser's constructive fraud claim was inappropriate because

USA Trouser might be able to provide evidence that the directors owed a director–creditor fiduciary duty, and Judge Reidinger had dismissed the claim for lack of that duty. *Id.* at 161. The Fourth Circuit affirmed the remainder of Judge Reidinger's order. *Id.* at 162.

{78}  The effect of the two federal judgments serves to limit any fiduciary duty that Williams might owe to USA Trouser to such a duty that might exist if USA Trouser can prove that ILG was in the process of winding-up or dissolution. The Fourth Circuit did not address whether specific actions by the directors constituted breaches of the director–creditor fiduciary duty, but it did determine that one action could not constitute breach:

> [T]he forced liquidation of ILG's assets and distribution of the proceeds to ILG's primary lender could not form the basis of a breach because, "even after the fiduciary duty arises, directors of a corporation may prefer secured creditors over unsecured creditors" by paying all debts to the former before paying any debts to the latter.

*Id.* at 161 (quoting *Keener Lumber*, 149 N.C. App. at 33, 560 S.E.2d at 827). Therefore, USA Trouser's breach of fiduciary duty and constructive fraud claims in this matter have not been finally adjudicated in the ILG action and might survive beyond estoppel, but those claims are limited to the extent of USA Trouser's ability to prove that ILG was in the process of winding up or dissolution, which may create a creditor–director fiduciary relationship between Williams and USA Trouser. Further, ILG's decision to pay its secured creditors before paying USA Trouser, as a matter of law, cannot now constitute a breach of that duty.

### d. USA Trouser's Fraudulent Concealment Claim Survives but Must Be Limited to the Same Degree as Its Breach of Fiduciary Duty and Constructive Fraud Claim.

{79}  To state a claim for fraudulent concealment, USA Trouser must show that that there is a relationship of trust and confidence between the parties and that Williams has failed to disclose all material facts. *Stamm v. Salomon*, 144 N.C. App. 672, 680, 551 S.E.2d 152, 157–58 (2001).

{80} USA Trouser's fraudulent-concealment claim in this action is presented in a different-enough manner from the fraudulent-concealment claim in the ILG Lawsuit so as to prevent the Court from dismissing the claim due to collateral estoppel.

{81} Judge Reidinger dismissed USA Trouser's fraudulent-concealment claim on two grounds: (1) that Andrews, Sanchez, and Sheely did not owe a fiduciary duty to USA Trouser, and (2) that USA Trouser did not act in reliance on any failure to disclose by Andrews, Sanchez, or Sheely related to the sale of ILG's sock inventory to a third party. *Int'l Legwear Grp., Inc.*, 2012 U.S. Dist. LEXIS 177456, at *30. Even though the Fourth Circuit vacated Judge Reidinger's holding that the officers owed no fiduciary duty, it nevertheless upheld Judge Reidinger's dismissal of USA Trouser's claim for fraudulent concealment, because there was no evidence of an action taken in reliance of a breach of that duty. *Andrews*, 612 Fed. App'x. at 162. In the present action, USA Trouser's fraudulent concealment claim is premised on William's concealment of ILG's financial status from USA Trouser. USA Trouser alleges that it would have stopped shipping socks to ILG had it known of ILG's tenuous financial status. Neither Judge Reidinger nor the Fourth Circuit decided this issue, and as such, it was not "actually determined" so as to preclude the claim based on collateral estoppel. *Powers*, 196 N.C. App. at 642, 676 S.E.2d at 92.

{82} Therefore, Williams's Motion to Dismiss is DENIED as to USA Trouser's fraudulent concealment claim, but proof of the existence of a duty upon which a concealment claim may be pursued must be limited to the same degree as USA Trouser's breach-of-fiduciary-duty and constructive-fraud claims.

### e. USA Trouser's Claim of Fraudulent and/or Negligent Failure to Perform Statutory Duties Is Barred by Collateral Estoppel.

{83} In support of its claim for "fraudulent and/or negligent failure to perform statutory duties," USA Trouser alleges, *inter alia*, that Williams failed to perform his duties as a CEO, failed to inform himself regarding ILG's financial

status, failed to schedule meetings of director or shareholders, and failed to wind down the business in an orderly manner. In support, USA Trouser states that Williams was in breach of sections 55-7-01, 55-14-05, and 55-14-06 of the North Carolina General statutes, as well as "applicable or equivalent Virginia statutes." (First Am. Compl. ¶¶ 251–52.)

{84} In the District Court Order, Judge Reidinger held that USA Trouser lacked standing to bring a claim of failure to perform statutory duties, as ILG's officers and directors owed a statutory duty to ILG rather than to USA Trouser. *Int'l Legwear Grp.*, 2012 U.S. Dist. LEXIS 177456, at *32. Judge Reidinger then dismissed USA Trouser's claims for failure to perform statutory duties against Andrews, Sanchez, and Sheely. *Id*. This holding is binding against USA Trouser, which is therefore collaterally estopped from arguing that it has standing to bring a further claim for fraudulent and/or negligent failure to perform statutory duties. Irrespective of the collateral estoppel effect of the District Court Order, this Court independently reaches the same legal conclusion as Judge Reidinger regarding this claim.

### 3. USA Trouser Has Failed to Adequately Allege in Support of Its Negligent Misrepresentation and Fraud Claims that Williams Made an Affirmative Representation to USA Trouser.

{85} Outside the context of collateral estoppel, Williams argues that USA Trouser has failed to allege that he made an affirmative representation on which USA Trouser may base a fraud or negligent misrepresentation claim.

{86} To plead a fraud claim, the essential elements include the following: "(1) [a] false representation . . . of a [past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (third alteration in original) (quoting *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 437, 617 S.E.2d 664, 670 (2005)). It is well established that allegations of fraud must be pleaded with greater particularity than other claims. *See* N.C. R. Civ. P. 9(b); *see*

*also Terry v. Terry*, 302 N.C. 77, 84, 273 S.E.2d 674, 678 (1981). A plaintiff may meet this burden by "alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry*, 302 N.C. at 85, 273 S.E.2d at 678.

{87} To successfully plead a negligent misrepresentation claim, a complaint must allege that "(1) a party justifiably relie[d], (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." *Walker v. Town of Stoneville*, 211 N.C. App. 24, 30, 712 S.E.2d 239, 244 (2011) (quoting *Simms v. Prudential Life Ins. Co. of. Am.*, 140 N.C. App. 529, 532, 537 S.E.2d 237, 240 (2000)). In contrast to a fraudulent concealment claim or other claim based on a failure to disclose, and similar to a claim of actual fraud, "[f]or [a] negligent misrepresentation claim, the Court . . . must inquire whether there has been an adequate allegation of an actual, affirmative representation." *Loftin v. QA Invs., LLC*, No. 03 CVS 16882, 2015 NCBC LEXIS 44, at *25–26 (N.C. Super. Ct. Apr. 30, 2015).

{88} The First Amended Complaint is devoid of allegations that Williams personally made any affirmative representations to USA Trouser, at most alleging that "Williams led Trouser to believe ILG was financially sound and would be for the future." (First. Am. Compl. ¶ 81.) Such an allegation does not meet the heightened pleading requirements of an actual fraud claim. Further, even under the liberal Rule 12(b)(6) standard, when construing that statement in the light most favorable to USA Trouser, this allegation does not give Williams "notice of the transaction, occurrences, or series of transactions or occurrences, intended to be proved showing that [USA Trouser] is entitled to relief" for its negligent misrepresentation claim. N.C. R. Civ. P. 8(a)(1).

### 4. USA Trouser's Civil Conspiracy Claim Against Williams Should Be Dismissed.

{89} To state a claim for civil conspiracy, USA Trouser must plead that there was an agreement between Williams and someone else to do a wrongful act, that there was an act committed in furtherance of the agreement, and that USA Trouser suffered damage from the act. *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995). However, the doctrine of intracorporate immunity, which is well established in North Carolina law, generally prohibits making a conspiracy claim against a corporation and its agents because "claiming that a corporation has conspired with its agents, officers, or employees . . . is 'tantamount to accusing a corporation of conspiring with itself.'" *Kingsdown, Inc. v. Hinshaw*, No. 14 CVS 1701, 2015 NCBC LEXIS 30, at *35 (N.C. Super. Ct. Mar. 25, 2015) (quoting *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007)).

{90} There is a narrow exception to this prohibition that applies in instances where the alleged conspirator "has an 'independent personal stake in achieving the corporation's illegal objective.'" *Kingsdown*, 2015 NCBC LEXIS 30, at *36 (quoting *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985)). But an interest in the general profitability of the corporation is insufficient to establish that a party has an independent personal stake in the corporation's illegal objective. *Garlock v. Hilliard*, No. 00 CVS 1018, 2000 NCBC LEXIS 6, at *17–18 (N.C. Super. Ct. Aug. 22, 2000).

{91} The allegations upon which USA Trouser premises its conspiracy claim against Williams may fairly be grouped into two categories: (1) actions that Williams undertook in concert with ILG and its other officers and directors to an end that ultimately harmed USA Trouser, and (2) actions that Williams undertook with Navigators to avoid paying the default judgment that USA Trouser obtained in the ILG Lawsuit. The Court concludes that the doctrine of intracorporate immunity bars claims based on the first category of allegations. Any conspiracy claim based

on the second category of allegations should fail for the same reasons that the Court has determined that the conspiracy claim against Navigators fails.

5. **The Court Must Defer Its Ruling on any UDTP Claim, but any Such Claim Must Be Limited to the Same Extent as the Underlying Claims on Which the UDTP Claim Rests.**

{92}   USA Trouser's UDTP claim is predicated on the actions underlying its other claims.  Because the Court has found that several of USA Trouser's other claims, though limited, survive Williams's Motion to Dismiss, USA Trouser's UDTP claim should also survive.  *C.f. Trantham v. Michael L. Martin, Inc.*, 228 N.C. App. 118, 125, 745 S.E.2d 327, 333 (2013) (indicating that conduct that constitutes a breach of fiduciary duty and constructive fraud is also sufficient to support a UDTP claim).

## V.   CONCLUSION

{93}   In conclusion, Navigators Management's Motion to Dismiss and Navigators Insurance's Motion to Dismiss are GRANTED.  All claims against Navigators Management and Navigators Insurance are DISMISSED WITH PREJUDICE.

{94}   Williams's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  The following claims against Williams are DISMISSED WITH PREJUDICE:

1.  Actual fraud;
2.  Negligent misrepresentation;
3.  Fraudulent and/or negligent failure to perform statutory duties; and
4.  Civil conspiracy.

USA Trouser's other claims are limited as described above.

IT IS SO ORDERED, this the 21st day of July, 2016.


                                    /s/ James L. Gale
                                    James L. Gale
                                    Chief Special Superior Court Judge
                                      for Complex Business Cases